Mr. Pérez, good morning. You have three minutes reserved for rebuttal. You can begin whenever you're ready. Good morning, and may it please the Court, my name is Dan Pérez. I represent the Kareem Barrow Pursuant to the Criminal Justice Act. The government advances a curious argument in this appeal. It asks this Court to invoke a doctrine of judicial convenience, which is how this Court has characterized the current sentence doctrine, to leave in place an amended judgment in a criminal case that conflicts not only with what the district court said in open court during the amended sentencing hearing, but what the government itself asked the district court to leave, to put in place. So your point here, I guess, is that the judgment announced in open court was not replicated in the judgment. That's correct, Judge. And with that, you have an obvious disconnect that has to be remedied. But what if the defendant pleads guilty to everything, and then at a later point, and his sentence, and all those sentences are made, and then the judge says they're concurrent, and then the judge just simply vacates some of the, later on, vacates some of the judgments, some of the counts. You still have counts in place that were resulted in sentences, and why isn't that sufficient? Because there's a difference now between what the judgment says— I just want to clarify, Judge Walker. Is this a hypothetical, or is that the Court's understanding of this right now? No, it's a hypothetical. Okay. I would say the answer to that question is it depends. It depends on what the other sentences were. So, for example, if the Court specifically said, I'm going to find you, I'm going to adjudicate you guilty of three different counts of conviction, and I'll use the Torres case because that's the one that Judge Bianco sat on. I'll adjudicate you guilty of two counts of kidnapping and impose sentences of 292 months for those, and one count of conviction of stalking, I think it was, and impose a sentence of 240 for that, and then vacates the 240. Under those circumstances, what's the difference? I mean, that, I guess, would be the proper application of the concurrent sentence doctrine. That's not what happened here, though. What happened here is that—and I'll just direct the Court to two pages of the record, and it is a 15-year-old record, so I hope the Court will indulge me. Page 8-112, the last paragraph, the second-to-last sentence, which is the government's statement. We respectfully request that the Court uphold the defendant's conviction on count four, which charges him with 18-2113d and carries a 25-year statutory maximum, and dismiss the remaining charges. Then at page 114 of the appendix, specifically page 6 of the sentencing transcript—I'm sorry, I think it's 6. I should have brought my cheaters. The Court says at line 12, I will then also ask that probation submit a supplemental PSR that reflects the fact that Mr. Barrett's sentence reflects one count, because I don't think that they need to redo it. I think they just—you're right, et cetera, et cetera. So there's just one count in this case. It's a 25-year— Well, just to add right before that, in his page 6, he said, I will file an amended judgment that reflects the 25-year sentence on the count that addresses the 2133d charge. All singular. Right. Everything is fine until the written judgment. That's right. And the reason that I prepared the reply brief the way that I did was because throughout, unfortunately, the history of this case, there has been a bit of a disconnect between what happens in court and what ends up on the docket. And there was, in the 10-year history of this appeal, there was a period of time in which the docket did not even reflect Mr. Barrett's trial. It did not reflect conferences. And I remember vividly coming to this Court, filing a motion for guidance, saying, what do you want me to do? I don't know how to proceed with this appeal. So the only thing you're—I know your client has his own pro se brief, but the only thing you're asking this Court to do is to send it back to Judge Karras to have him amend the judgment to reflect that it's count four only, correct? Is that— That's right. It's at the last page of my reply brief. That is the review that we're requesting. It would be a ministerial act that should not require Mr. Barrett to appear. It's simply to mesh the judgment, the amended judgment, with what everybody discussed on May 30th of 2023, what the parties requested and what Judge Karras said he would do. All right. Unless the Court has any other questions, I will stand on my feet. All right. Thank you, Mr. Karras. Thank you. All right. We'll hear from the government. Mr. Watson. Good morning and good night to you, Mr. Court. My name is Raymond Watson. I'm an assistant justice attorney in the Southern District of New York. I represent the government on this appeal. Notwithstanding the complex procedural history, this case invites us to straightforward application of the concurrent sentence doctrine. Everyone agrees that Mr. Barrett should be sentenced to 25 years in custody. Because his sentence would not change, even if the amended judgment reflected one or seven counts, the concurrent sentence doctrine provides that this Court may exercise its discretion. Mr. Perez cites in his reply the Ray case that suggests this is a direct appeal. He never had his direct appeal, and therefore, we should not apply that doctrine in this situation. What's your response to that? So the response to that, Your Honor, is that there are two appeals here. There's a direct appeal with the 2015 docket number from the original judgment, and then there's Mr. Barrett's appeal in the collateral review proceedings, which has a 2023 docket. The government is not asking this Court to apply the concurrent sentence doctrine to Mr. Barrett's direct appeal in the 2015 docket. And what we see with the cases that the government decided in this brief, the case looks pretty clear that the concurrent sentence doctrine still applies in the 2015 docket. But this would be a pretty unique situation to apply that doctrine. That's a pretty narrow doctrine, and we'd be applying it in a situation where he did not have a direct appeal yet, and he's agreeing to this. This is an agreement of both sides, as Mr. Perez pointed out. Everybody stood in court. Everybody was under the understanding. The judge said he was going to do this, and yet the government argues somehow that this was not a clerical error, which I'm scratching my head at. Putting aside the history of the case and the docket problems, there's no indication that Judge Karras changed his mind as to what to do. And the government's saying it wasn't an abuse of discretion for him to do that. Again, we'll put that aside. But there's no indication that he changed his mind and did this for some other reason, right? How can we review an abuse of discretion when he didn't give any reason for why, notwithstanding this agreement in court, he did something different in the judgment? So I think there are a couple points there, Your Honor. And I think the most important point is that the amended judgment itself is a communication of what the district court intended to do. But why do you think it wasn't a clerical error? What's your basis for thinking it was a clerical error? When everybody stood in court and said, this is what we're going to do. And he said, I'm going to do that. And then a few weeks later, the judgment comes out completely different. The indication is that it actually—look, I recognize that the amended judgment is inconsistent with what the parties have discussed at the May 2020 Status Conference. However, it is also fundamentally consistent with other aspects of the court's decision. In particular, it was always understood that no aspect of restitution would be affected by the court's ruling. And I think part of the issue here is it ties back to the relief that Mr. Brown actually requested in his 2255 motion, which was specifically to be able to take advantage of a 25-year sentence. I know, but in the agreed-upon world, he was taking responsibility for one count, for one robbery, right? In that one count, correct? Correct. And in the judgment, he's adjudicated guilty of multiple robberies, right? As it now stands. So that's a problem, isn't it? Apart from the fact that we're talking about the 25 years, there was a special assessment of $100 for each one. And what they said in court would have been one special assessment. But what was ultimately determined in the judgment, anyway, in the written judgment, there were whatever, seven special assessments. That's a different sentence. And so why is the government taking this position when your adversary is asking for a very straightforward, simple recommendation that it go back down and that the error, whether clerical or not, was be corrected by just conforming the judgment, the written judgment, to what was said? So, Your Honor, I think on your first point, the fact that there is an additional special assessment, that would be an issue if this were a direct appeal. But that's not something that I do think it's important that the application as presented originally started as a rule for entry. And at the Circus 2020 hearing, Mr. Brower's counsel in this report made very clear that they were asking a very narrow, specific... I know, but doesn't it matter if... Yes, he wanted to have a 25-year sentence, but doesn't it matter whether he would be taking responsibility for multiple armed robberies or one? The Lafleur case says, when it talks about the remedy, that the plea would be re-offered and presuming the respondent accepts the offer, it then discusses all these options that the district court had, right? That's the way Lafleur is set up, that it presumes the respondent will accept the offer of the plea that was ineffectively not communicated to him or whatever it might be. So why isn't that critical in this case, where he agreed through counsel, at least, to take responsibility for one robbery and count four? Why isn't that really important? He didn't say, I'm going to take responsibility for all these armed robberies. We have no indication of that, not through him, not through counsel. And yet the government's saying, even though he wanted a 25-year count, he never agreed that he would take responsibility for all these robberies. It doesn't matter. Your Honor, I think it goes back to what happened in 2020. The request was narrow, and part of the reason why Mr. Crowder's request is narrow and limited to the sentence is because nobody actually really knew what the terms were. The only thing that was clear is that there would be a 25-year sentence or a 25-year count. And because of that fact, which is that all we knew was really the sentence, what the Judicial Court did is it exercised its discretion in effecting that 25-year sentence. Now, if you see what the Judicial Court did in December 2020, when it entered its order, it actually upheld all of the counts and then imposed the 25-year sentence. Do you think that what the judge, what actually happened in the terms of the written judgment was satisfactory? I mean, it didn't violate the law? It's supposed to reflect the actual sentence, and the sentence has to be opposed to the defendant's presence in open court. And then the judgment has to reflect that sentence. Otherwise, the defendant isn't present for a different sentence. The prevalence, Your Honor, of that point is that there was an actual de novo resentencing. And in this particular case, the Judicial Court did not conduct a de novo resentencing, and everybody agreed that the Judicial Court was not required to conduct a de novo resentencing. That's what the United States v. Finney case stands for. And if you look at what the parties had asked in history... No, but if the parties, if your adversary had asked for a de novo sentencing, which he hasn't apparently, he just wants to have the judgment corrected, I'm not sure he wouldn't be entitled to it. So he's basically just cutting to the chase and trying to figure out, get the record straight, and have a sentence reflected on one count. And the other count's gone. Why is the government not immediately saying that that's fine? How do you gain from not doing that? I think what's important, Your Honor, is that the amended judgment actually accomplishes the most right result, which is Mr. Barrett gets the 25-year sentence he asked for, and the restitution and forfeiture order is not disturbed. What was repeatedly part, not only of the order, but of the subsequent requests that the parties had made to make changes to the order, nobody ever contemplated or even thought that the restitution order would just evaporate once this case got resolved. And what the amended judgment does is it meticulously and repeatedly lists seven counts, $700 special assessment, it attaches a forfeiture and restitution order, which would only be valid if there were counts that supported the forfeiture and restitution order. So you're suggesting the government made a mistake and not because of forfeiture and restitution agreeing that it would only be count four and that Judge Karas was independently correcting for that? Is that what you're suggesting? Yes, Your Honor. And what it appears like is that this is just something that the parties either so deeply took for granted as not being an issue or something that they just didn't consider. But what we get in the amended judgment is we get the specific relief that Mr. Barrett asked for, which is the 25-year sentence, and then we uphold the court's clear intention and the party's understanding. But nobody's challenging the restitution and forfeiture here, right? No, no one's challenging explicitly, but if there's only one count, if you attach a restitution and forfeiture order to that judgment and it's based on convictions on counts that are vacated, I think that would cast serious doubt on the validity of restitution and forfeiture work. Can I ask just a... There's a couple of ways to conceptualize what's happening here, and I think it has ramifications for forfeiture and restitution. It also has ramifications for Mr. Barrett's independent challenges to the conviction. One vision is that the court did what Lafler suggested, which is essentially vacate everything and allow the defendant to come back and plead to whatever everybody agreed to. You're not contending that that happened because there is no plea colloquy, there's no subsequent plea. Am I right about that? So the other possibility is the court vacated the convictions on... Let's pretend for a minute that the court did what it said it was going to do. The court vacated the conviction on everything but one count. And while you're raising promises that renders other aspects vulnerable, I want to ask you sort of a side question, and I'm going to ask Mr. Precious as well. If that's the vision that we have, if the conviction that on count four is the conviction that the jury issued, isn't he entitled... Isn't Mr. Barrett entitled to us reviewing his substantive challenges to that conviction? He filed a Rule 33 motion, he never orpaned it. How does that fit into this myth? Sure, Your Honor. So Mr. Barrett's 2255 claim was premised on his claim that he was chosen not to proceed to trial and is said to be guilty to the 25-year sentence. His Rule 33 claim was that, and then the court converted it to a 2255. We didn't have a final judgment yet, so it wouldn't actually have been a proper 2255. It was still up on appeal. That is correct, Your Honor. But because it started as a Rule 33, that explains why the mask that they made in the district court was so narrow and so specifically tailored to correcting the 25-year sentence. And I think the way that the counsel in the district court framed it, they said we're just seeking a sentence that Mr. Barrett has offered. It would require no additional work by the court, no additional use of government resources. And the whole point was that resolving it at this juncture would obviously be for a case court, which is known for it. That's page 74 of the appendix. I think it's because the case started that way, it explains why the parties were really just focused on the specific relief of correcting the sentence. Correcting the prison sentence, not the sentence. The sentence was more than that. The sentence was more than 25 years. It was restitution. It was forfeiture. It was special assessment. So it was going to change that. But if, in fact, counsel had not been ineffective and the government had accepted his plea, it would have been a plea to one count. It would have been a plea to count four. And that would be the case. Correct? That would be the case. That's to go back and correct what was done, which was the ineffective assistance of counsel. So what's wrong with doing exactly that and forgetting these other counts and forgetting the restitution of these other counts? That never would have occurred had he pled guilty to the one count and gotten his 25 years. So we actually don't know that that is, in fact, true because we don't know what the plea offer was other than that it would have involved a 25-year sentence. And just to be clear, I don't think any of the parties have the understanding that the offer that was made— So you're saying that the lawyer—the details of what the lawyer hid from his client were not complete or that he continued to hide things from his client about the full sentence? I mean, wasn't the deal between the government and counsel a 25-year sentence? Was it going to be 25 years to all counts or 25 years to one? Or we don't know. So we don't know. The record is not clear. I think for us to know— That's why on the left there should have been a guilty plea here to whatever count he was deciding to take. Right. Right? Right. So just going back to Judge Rahman's point, because of the lack of that guilty plea and at least some confusion about whether or not he was forfeiting his right to make other challenges to the jury verdict, you know, I'm not sure why—you argued mootness in the papers, but a 2255 can correct a sentence without mooting out an entire appeal. You could still preserve your ability to make other arguments. Right? It doesn't necessarily file because a judge corrected a sentence that everything else in the case is mooted. Right? That's generally true. But in this particular case, the whole premise of this 2255 motion is that, you know, he would have pleaded guilty. And in fact, he said he would—that was the whole premise. And so what the district court did is it exercised its discretion in trying to roll back— Well, what the district court did was try to—ultimately, the written judgment was interpret what pleading guilty would be, because we don't know what he would plead guilty to. We just talked about that. Would it be one count? Would it be more than one count? We don't know. So the district judge assumed that the guilty plea would be to the whole indictment, presumably, but that he would be sentenced to 25 years. And that's just a supposition that may not be accurate. But the part—again, this goes back to the narrow nature of the asterisk. We're trying to figure out what the remedy should be. Right. Do we send it back for a new plea and a brand new proceeding, or do we somehow tinker with what's already been tinkered with in various ways that hasn't worked? I think the concurrent sentence doctrine indicates that the court does not need to send it back because, ultimately, in the 2255 context, Mr. Harrell is asking for essentially the same relief that he got, which is, you know, focusing solely on the custody. That's what he was focused on. But nobody was focusing on the restitution or the forfeiture, which would have been part of the plea because whatever he pled to would have encompassed that. Yeah. So— Go ahead, Judge Robinson. Sorry. He can finish his answer to Judge Walker, and then I would like to ask a question. Yeah. You know, I think what makes it challenging here is that there was no written offer that the government had made. And so if we're trying to avoid a situation that gets kind of mired in a whole bunch of complications about what is it going to look like, what is restitution, and is it simply going to look like we—I think the district court did its best, and the parties did their best to try to approximate kind of, you know, what Mr. Harrell was asking for, which was a 25-year sentence. Right. And sometimes doing your best isn't good enough. Doing what he thought was his best was good enough. He could have asked—could have had a guilty plea. He didn't do that. He could have gone back and gone back to—as far back as you need to go to replicate what would have happened had the government transmitted to the defendant, or if the defense lawyer had transmitted to the client, what the deal was. Judge Robinson? Yeah. So I just want to clarify that I understand your position. The government writes a letter. This is the last position the government took before the final hearing. It says, after discussion among the parties, we respectfully request that in light of the court's grading the defendant's 2255 motion, the court uphold the defendant's conviction on count four, which charges him with blah, blah, blah, which carries a 25-year statutory maximum sentence, and dismiss the remaining charges. The court may then hold a resentencing or file an amended judgment reflecting this modification and then 25-year sentence this court intended to impose. Is it your—is the government no longer agreeing to the request that's reflected there? If we were to vacate the court's judgment here on remand, would the government stand by that ask, or is the government now taking the position that it wants to impose sentence on all accounts or more accounts? So I think the government's position here is that it would be appropriate for the restitution to remain the same, given that that was much clearer to be everyone's intention. But that wouldn't have happened. That wouldn't have happened if the judge or the clerk or whoever drafted the written judgment had been faithful to what had been said in court. It would have just been a guilty—finding him guilty on count four. The district court had the discretion, however, to not go along with that approach, and it makes a lot of sense— It's something that everybody agreed to. No, what you're trying to have is both ways. You want the restitution on all the counts, and you want the guilty plea to be 25 years. And it's not—you don't want it confined to one count. Now, you did before in open court. Look, I think what happened in the years following the December 2020 order is that the parties really went above and beyond to try to figure out a solution to this 25-year sentence conundrum, which, as the government—as the parties explained in their joint letter, which is at page 11 of the appendix, you know, the only reason that the parties even asked for the order to be changed in early 2021 was because the order that the court imposed— Let me just go back. I want to go back to Judge Robinson's question. If we were to decide this has to go back, right, there'd be two options. One would be to send it back and tell Judge Karras to amend the judgment to conform with the agreement of the parties. Now, you're arguing that that may result in a restitution issue, although I don't really understand that, because a defendant can agree to restitution apart from the counts of conviction, right? I mean, can a defendant always agree to pay a certain amount of restitution as part of— Accidentally— Right. And nobody raised that. Nobody raised restitution. In connection with this amended judgment, nobody said, Judge—and when you amend it to be count four, you have to adjust the restitution. That wasn't part of the discussion, right? That's right. All right. So, putting that aside of whether or not, as you indicated, it would be unlawful to continue to impose the restitution where the only request by the defendant was to lower the jail time by amending it to include one count, does the government want us to open it more broadly so that you could argue or make sure that the restitution is not going to be an issue or not? No, Your Honor. I think if—you know, the government would certainly be of the view that if this case were remanded, for example, James' agreement back to Judge Paris, I think that Judge Paris could certainly provide some insight that would be helpful. The point is that Judge Paris, in entering the amended judgment, presumptively intentionally entered that judgment, and he had the discretion— I don't think—I'm not sure I agree with you on that. Under these circumstances, I don't think that he could have just changed the counts without going back to the defendant and saying, pursuant to this whole lack of a line of thinking, are you agreeable to accepting responsibility for these counts for purposes of this judgment? Here we have an agreement to count four. I don't think Judge Paris can simply say, you know what? Even though there was an agreement he would take responsibility to count four, I'm going to change that because of some restitution issue. I think he would have to go back to the defendant and get their agreement that he's willing to take responsibility for that. The parties never really took that position starting in September 2020. The parties noted in their letter, you know, at Appendix 111, that the reason that the counts, as originally indicated in Judge Paris' order, it was not workable because there were 924C convictions that— But you're missing my point. It was always upon agreement. There was never this idea that Judge Paris was going to alter the convictions on his own to reflect some understanding of what the plea would have been. It was always in consultation with the defense, that there be an agreement. That's the way it was all along. It did change over time, but it was always with the agreement of the defendant, correct? That's true after the December 2020 order was entered— Right. —which did not take that position. And the district court could have asserted an amended judgment. Had the December 2020 order been a violent order, the district court could have just amended the judgment as United States v. Appendix said. Why shouldn't we go back and send it back—just make your argument as to why we shouldn't— send it back for the defendant to enter a plea and have a complete understanding of what the sentence would be under those circumstances. Restitution, forfeiture, special assessments, years, the whole thing. What's wrong with that? So— We go back to square one, and that's the square that would have happened if there hadn't been an effective assistance of counsel. So I think the point is that it's not necessary to go back because, again, it just goes back to this current sentence. Now, that's the point. Mr. Barrow got the relief he requested in his 2255. He got a 25-year sentence. The district court and the parties did what they could to put that into effect. And, you know, again, the fact that there was— So you're going to tag him with the guilty—with guilty on all the other counts and just say those sentences aren't going to matter. The prison sentences aren't going to matter, but we're going to get him for the restitution. So I just want to be clear that if it does go back—if this case does go back to our agreement, the government will certainly adhere to this agreement that Mr. Barrow—that there be a one-to-one count. All right. All right. Thank you. Mr. Perez, you have three minutes in rebuttal. Judge Walker, the case should not be sent back to a review because no one is asking for that. The only request in this appeal is for the amended judgment of the criminal conviction to conform to what everybody agreed to on March 30, 2023. That's all. And as for Judge Bianco, the point that Your Honor had made— Well, what you just laid out is the negotiating position that you would have with the government if it went back. That would be your negotiating position. Their negotiating position might be different. They might want more restitution. And there might be—that would have to be dealt with at the plea. I'm not asking for a negotiation. I'm just asking for— Right. I know. But you stated your position. The government, I think, just indicated that they would stand by their agreement. They wouldn't seek to renegotiate it. Right? Correct? All right. Again, I think we've gotten a bit far afield here. This, to me, is a very, very narrow appeal, a very, very narrow belief that's being busted. The notion that Judge Harris changed his mind and called an audible after receiving all of these letters and having two conferences in May of 2023 and just decided, you know what? I'm going to change it up, and then did so without entering an order, advising the parties, putting a memo on the docket. It just seems very, very difficult to believe. What happened here was everybody was on the same page. One of the big issues that we haven't discussed today that was motivating all of this was Mr. Barrow's health condition, his deteriorating health. He had any number of health problems. He had lesions on his liver. There was—the lawyer, the defense counsel talked about a motion for compassionate release. So the sense that you get from the overall record in 2023 is that everybody just wanted to get him back into prison to do his term of 25 years so that the motion for compassionate release could be teed up. That's why all we're asking for, at least all I'm asking for as an appointed counsel, is for the amended judgment to simply conform to what the orderly imposed judgment was, which is what this Board's precedent requires. So, Mr. President, I'm going to ask you the question I asked the government as well, and I realize maybe it's an awkward position to ask you, but your client has independently made some challenges to the conviction, right? Trial-error-type challenges. I understand you're saying this isn't a new plea. This is vacating everything else and imposing the agreed-upon sentence for the remaining count. Has he waived his appeal challenges to that conviction, the underlying conviction, and when and how did that happen? No, he did not. No, and it's sort of an awkward position for me. I'll be very candid because I don't want to take a position here today with a client who is in a federal prison who has put arguments before this Court at his request that I may or may not agree with. I don't want to. I certainly don't want to compromise his arguments. All I can say is, on this record, it appears, as far as the record is concerned, that this was very simply the latest clerical error in a case that's had a string of clerical errors. And so the relief should be very, very simple. A limited remand simply to conform the amended judgments, what District Judge said on May 30th. But Judge Robinson suggests we have to also address his challenges to the jury verdict because there was no indication that he understood he was waiving that by agreeing to this. I can't take a position on that, Your Honor. I appreciate your question, Judge Robinson. I do. But I don't think I can take a position on that today. All right. Thank you both. We'll reserve the decision. Have a good day.